UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAR HEARNS,<br><br>        Plaintiff,<br><br>v.<br><br>R. GONZALES, et al.,<br><br>        Defendants. | CASE NO. 1:14-cv-01177-DAD-MJS (PC)<br><br>**ORDER VACATING ECF NO. 81**<br><br>**<u>CORRECTED</u> FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

**I.    Procedural History**

On June 16, 2017, this Court issued findings and recommendations to grant Defendants' motion for summary judgment on exhaustion grounds. (ECF No. 81.) On further reflection, the Court finds said recommendation to grant Defendants' motion was in error, as Defendants' summary judgment motion had already been ruled on and denied. (ECF Nos. 38 & 67.) Rather, the Court should have recommended that this action be dismissed for failure to exhaust based on its factual findings after the Mary 26, 2017 evidentiary hearing. Accordingly, ECF No. 81 is hereby VACATED and the following corrected findings and recommendations addressing only the factual findings on the issue of exhaustion after the evidentiary hearing shall issue.

Plaintiff is a parolee proceeding pro se in this civil rights action brought pursuant to 42 U.S.C. § 1983. The action proceeds against Defendants Rosa Gonzales and Sergeant Olsen on Plaintiff's First Amendment retaliation, Fourteenth Amendment Equal Protection, and state tort conversion claims.

Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust administrative remedies. (ECF No. 38.) It is undisputed that Plaintiff did not properly exhaust his administrative remedies before filing his lawsuit. There was a dispute of fact, however, over whether circumstances beyond Plaintiff's control rendered the administrative remedies effectively unavailable to Plaintiff. Accordingly, the Magistrate Judge recommended that Summary judgment be denied. (ECF No. 49.) On March 10, 2017, the District Court adopted the Magistrate Judge's Findings and Recommendations to deny the motion. (ECF No. 67.) The matter was referred back to the Magistrate Judge for further proceedings on the issue of exhaustion. On May 26, 2017, an evidentiary hearing was held before the undersigned to resolve disputed issues of fact. Plaintiff represented himself. Deputy Attorney General Lucas Hennes and Supervising Deputy Attorney General Christopher Becker appeared on behalf of Defendants. Plaintiff testified on his own behalf; three witnesses testified on behalf of Defendants. The matter was deemed submitted at the conclusion of the hearing

**I.    Legal Standard**

The Court should decide disputed factual questions relevant to exhaustion "in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." Albino v. Baca, 747 F.3d 1162, 1169-71 (9th Cir. 2014). "If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." Id. at 1171.

The defendant bears the burden of raising and proving the absence of exhaustion. Id. at 1169; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Exhaustion may be excused where administrative procedures were effectively

2

unavailable, prison officials obstructed attempts to exhaust, or the plaintiff was prevented from exhausting because procedures for processing grievances were not followed. See Sapp v. Kimbrell, 623 F.3d 813, 822-24 (9th Cir. 2010). Where a Plaintiff alleges that a grievance or appeal was improperly screened, the inmate must establish "(1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Id. at 823-24. Alternatively, a plaintiff may show that officials failed to respond to a properly filed grievance in a timely manner. Vlasich v. Reynoso, No. CV F 01 5197 AWI LJO P, 2006 WL 3762055, at *3 (E.D. Cal. Dec. 20, 2006) (citing Circuit Court decisions holding that a prisoner's administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance.)

**II.    Summary of Allegations**

At all times relevant to this suit, Plaintiff was housed at Valley State Prison ("VSP") in Chowchilla, California. His factual allegations may be summarized as follows:

On September 13, 2013, Defendant Gonzales stated that Plaintiff and other African-American inmates were being too loud in the Facility D dayroom. Inmates of other ethnicities were also being loud, but Defendant Gonzales did not address them. Defendant Gonzales announced she was going to search the cells of all African-American inmates on the B hallway. During the search, Defendant Gonzales seized family photographs from Plaintiff's cell. She did not give Plaintiff or the other inmates a cell search slip and refused to return Plaintiff's photographs.

Plaintiff submitted several CDCR Request Form 22s ("Form 22") to the D-Yard program Sergeant, Defendant Olsen, complaining about Defendant Gonzales' conduct. Defendant Olsen refused to intervene.

**III.    Summary of Evidence Presented**

At the hearing, Plaintiff testified as follows with regards to his attempts to appeal

3

Defendants' actions:

- On September 13, 2013, Plaintiff filed a complaint with Internal Affairs regarding the search.
- Plaintiff also filed an inmate appeal ("602") on behalf of himself and other inmates affected by the search. On September 30, 2013, Plaintiff received notification that the 602 had been cancelled because a staff complaint such as it was could only be filed by and on behalf of an individual. Plaintiff was directed to resubmit his grievance on behalf of himself individually.
- On October 1, 2013, Plaintiff resubmitted his 602 as an individual. He sent it through institutional mail rather than using the appeals drop box. He never received a response to it.
- On October 27, 2013, Plaintiff filled out and filed a Form 22 inquiring about the status of his October 1, 2013, 602. When he did not receive a response, Plaintiff submitted a second Form 22 on November 24, 2013. Plaintiff received no response to the latter Form 22 either. Both forms were submitted to Correctional Officer T. Pronold, the unit officer, in accordance with a procedure whereby Officer Pronold was to sign and return the Form 22s to the inmate to place in the institutional mail.
- On March 25, 2014, after six months without a response to his 602, Form 22s, or Internal Affairs complaint, Plaintiff filed another 602. It was properly cancelled as untimely. Plaintiff then filed a Government Tort Claim and the instant lawsuit.

On cross-examination, Plaintiff maintained that he had received the September 30, 2013 cancellation letter prior to October 1, 2013, notwithstanding his deposition testimony suggesting that he did not receive it until it was mailed to him by Defense counsel in July 2016:

>	Q: . . . Now, can you confirm that this is the screen-out letter that you received with respect to this grievance?
>
>	A: Thing is, I never received—I never received anything from the situation. I

| | |
|---|---|
| 1 | never—when I sent the 602, we didn't receive paperwork back. So that's—it |
| 2 | was—it got real conflicting there, that— |
| 3 | Q: So—sorry. So for this, what's previously been marked as Exhibit B, your |
| 4 | [September 27, 2013] grievance? |
| 5 | A: Yes. |
| 6 | Q: You're saying you did not receive this letter telling you that it had been |
| 7 | cancelled? |
| 8 | A: No. I just—I have just received these letters from some paperwork from your |
| 9 | office, I would guess. And you guys sent this to us, and I end up getting this letter. |
| 10 | And I don't know how you guys found that letter—well, I know how you guys |
| 11 | found it, but I never—it was never sent to us. |
| 12 | Q: So you did not receive this letter until my office sent it to you in July 2016? |
| 13 | A: That is correct. |
| 14 | Mr. Hennes: Okay. I'd like to mark this as Exhibit C. (Whereupon, Defendants' |
| 15 | Exhibit C was marked for identification.) |
| 16 | Q: So Exhibit C does talk about this appeal that you filed? |
| 17 | A: Uh-huh. |
| 18 | Q: And it cancelled it because of it being presented as a group appeal; is that |
| 19 | correct? |
| 20 | A: Yes . . . . |
| 21 | (Hearns Dep. (Def.'s Ex. E) 62:20-64:2.)[1] |
| 22 | In response to the suggestion implicit in the above-quoted dialogue, that Plaintiff |
| 23 | could not have submitted his individual grievance on October 1, 2013 in response to the |
| 24 | September 30, 2013 cancellation letter because he did not receive the cancellation letter |
| 25 | until months later, Plaintiff testified that he was confused on the day of deposition as a |
| 26 | result of being questioned about a number of different papers and dates. He maintained |

---

[1] At another point, Plaintiff seems to say that he received the rejection a few months after it was issued. (Hearn's Dep. (Def.'s Ex. E) 63:22-65:10.

5

that he had in fact received the notification of cancellation prior to October 1, 2013, and resubmitted his grievance as an individual on October 1, 2013. He also acknowledged that he had been given, and he took, the opportunity to review and correct his deposition transcript and in fact made several corrections to it, but did not catch the apparent error in the above-quoted exchange.

In response to questioning by the Court, Plaintiff insisted that he never noticed that the above-cited portion of his deposition could be read as stating that he did not learn of cancellation of the September 27, 2013 grievance until July 2016. He also acknowledged that he had nothing to corroborate his claim that he submitted an individual 602 on October 1, 2013, noting that once a 602 was put in the drop box or institutional mail, there was no way to prove it had been filed. Plaintiff did not start making copies of his grievance forms until 2014, "after this situation." (Hearns Dep. 20:11-14.) Plaintiff did tell other inmates about the individual 602, but he had no means of contacting them or discovering their locations to ask them to testify in his behalf at the evidentiary hearing.

Finally, Plaintiff testified that he gave a copy of the October 1, 2013 602 to defense counsel at his December 8, 2016 deposition (but has since lost his copy). The deposition transcript makes no reference to any such exchange. Subsequent to the evidentiary hearing, defense counsel submitted a declaration averring that Plaintiff never gave him a copy of that 602. (Decl. of L. Hennes (ECF No. 80) ¶ 4). As noted above, Plaintiff testified that he did not start making copies until much later. (Hearns Dep. 20:11-14.)

Defense witness Keith L. Dixon identified himself as a former VSP Appeals Coordinator whose duties included managing the appeals office and collecting and processing appeals. In response to complaints that grievance forms were being tampered with, Dixon complied with an Inspector General recommendation and, prior to September 30, 2013, installed appeals drop boxes in all housing units at VSP. His office collected all appeals submitted via the drop box. Appeals office records do not reflect

any appeal being filed by Plaintiff at any time between September 30, 2013 and February 1, 2014.

Defendants' witness Mark Jeffrey Wilson, Associate Government Program Analyst at VSP, was charged with collecting, reviewing, and screening inmate appeals. He confirmed that the appeals drop box was in use in September 2013, but he acknowledged that some inmates continued to use the institutional mail for grievances. Wilson testified that he signed the September 30, 2013 letter cancelling Plaintiff's September 27, 2013 group appeal as well as the April 21, 2014 letter cancelling Plaintiff's March 25, 2014 602 as untimely. The procedure was for him to sign such documents, move them to the Secretary's desk and the Secretary was to mail them to the affected inmates. Wilson also is responsible for processing Form 22s submitted to the appeals office, but he had no indication of either of Plaintiff's Form 22s ever having been received by the appeals office. Wilson pointed out that the September 27, 2013 group appeal is the first item on the Inmate Appeals Tracking form (Def.'s Ex. K), even though the entry is undated.[2]

Defendants' final witness was Correctional Officer Theodore J. Pronold. Officer Pronold testified that he was the housing officer in Building C-2 in 2013 and was familiar with the process for submitting Form 22s at that time. Officer Pronold confirmed his signature on Plaintiff's October 27, 2013 and November 24, 2013 Form 22s.

**IV.  Discussion**

The determinative question at this stage of the case is whether Plaintiff did in fact resubmit, as an individual, a 602 on October 1, 2013, and never received a response to it. If the Court finds Plaintiff's testimony sufficiently credible to support his contention, a finding that his administrative remedies had been "effectively unavailable" to him could follow.

The evidence is far from clear.

---

[2] Perhaps because of the missing date, Dixon had indicated that Exhibit K did not reflect the September 27, 2013 group appeal Plaintiff filed.

7

But for the testimony of Defense witnesses, the Court is unable to see how Defendants' Exhibit K documents the existence of a response to the September 27, 2013, 602. However, there seems to be no real dispute that such a response existed and was issued on the dates referenced. (See Def.'s Exs. A and B.)

There is ambiguity in Defense counsel's deposition questioning of Plaintiff regarding Plaintiff's allegedly delayed receipt of the September 30, 2013, cancellation notice. Perhaps that ambiguity could justify genuine confusion on the part of Plaintiff as to which document was the subject of the questioning. Perhaps Plaintiff, having been asked about a number of different forms and dates, intended his "never heard back" response to refer to the follow-up 602 he claims to have filed October 1, 2013.

Defendants' questioning and argument suggest that Plaintiff may not have received notification of cancellation of the September 27, 2013, 602 until several years later, far beyond the time in which Plaintiff could have filed a timely new claim. If that were true, it could be argued that Plaintiff's administrative remedies were rendered unavailable by reason of the prison's failure to timely respond to the original grievance. However, Plaintiff's testimony refutes that suggestion.

Compounding the foregoing, we are here looking with hindsight at how the parties maneuvered through a system which, though presumably designed to protect both of them, actually creates an often confusing series of administrative hurdles which can be challenging to navigate.

The court finds it less than ideal to make a decision in the face of such circumstances. Yet the facts and law enable such a decision.

The Defense has the burden to show Plaintiff did not exhaust. That he did not is undisputed. Thus, the burden shifted to Plaintiff to show he tried, but was effectively denied the ability, to exhaust by reason of Defendants' failure to act on his October 1, 2013, 602. If there were any real shred of independent corroboration of Plaintiff's claim that he filed that 602 or if Plaintiff's testimony was otherwise fully consistent and credible, the Court might be able to find he presented the greater weight of the evidence on this

8

point. However:

Plaintiff provides no corroboration whatsoever. He has no copy of the October 1, 2013 Form 602. He has nothing but his own testimony that he prepared and filed a 602 on October 1, 2013.

It does not help that for Plaintiff's claims to be accepted, the Court must assume the September 30, 2103 rejection was delivered to him the next day and Plaintiff immediately turned around, obtained a 602 form and completed and filed it that day. Far from impossible; perhaps not terribly unlikely; but enough to raise a question.

He does refer to his own follow-up inquiries into the status of the October 1, 2013 602 as corroboration that the 602 existed, particularly since the follow-ups were admittedly signed by Officer Pronold before being returned to Plaintiff for mailing via institutional mail. However, the follow-ups are, regrettably, self-serving. And we have no evidence they were ever actually filed. They are not reflected in the prison tracking system.

It does not appear Plaintiff ever tried to find a corroborating witness (such as one of the other subjects of the rejected group appeal) to confirm he stated an intent to file alone and/or suggested that one of them do likewise.

The ambiguity in his testimony as to when he actually first received a copy of the rejection of the initial 602 does not help his case. The clarity with which he seems to say he did not get it until months after is rather compelling even when the ambiguity of the questioning is factored in.

Plaintiff's later claim that he provided a copy of the 602 to Defense counsel during his own deposition is, on balance, not credible, especially in light of Plaintiff's testimony that he did not start making copies of filed documents until after the October 1, 2013, 602 was supposedly filed. We also have Defense counsel's sworn declaration to the contrary, and one would not expect an attorney to risk his license and career by perjuring himself simply to defeat an exhaustion claim.

On balance, the Court finds that Plaintiff has failed to meet his burden of

demonstrating with credible evidence that administrative remedies were effectively unavailable to him.

**V.      Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT this action be DISMISSED due to Plaintiff's failure to exhaust administrative remedies.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **fourteen** (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within **fourteen** (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   June 19, 2017                       /s/ *Michael J. Seng*
                                                           UNITED STATES MAGISTRATE JUDGE